## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**for the use and benefit of**<br>**DIAMOND SERVICES CORPORATION** | **CIVIL ACTION NO:** |
| **VERSUS** | **DISTRICT JUDGE**<br>**HON.** |
| **RLB CONTRACTING, INC.,**<br>**HARBOR DREDGING, INC., and**<br>**TRAVELERS CASUALTY AND SURETY**<br>**COMPANY OF AMERICA** | **MAGISTRATE JUDGE**<br>**HON.** |

## <u>COMPLAINT</u>

Use Plaintiff, DIAMOND SERVICES CORPORATION brings this suit against

defendants RLB CONTRACTING, INC., HARBOR DREDGING, INC., and TRAVELERS

CASUALTY AND SURETY COMPANY OF AMERICA, and alleges it is entitled to relief on

the following facts:

### I.        Parties

1.

Use plaintiff, Diamond, is a corporation organized to do business and doing business in

the state of Louisiana. Relevant to this lawsuit, Diamond performed work for the benefit and at

the direction of RLB Contracting, Inc. and performing dredging relevant to a certain contract

awarded to RLB by the Army Corps of Engineers, Galveston District, Contract No.

W912HY19C0015, Bond No. 106988560, in the Houston Ship Channel.

2.

Defendant RLB Contracting, Inc. is a Texas company, awarded the contract referenced

above, a job within this judicial district.

3.

Defendant Harbor Dredging, Inc. is a Louisiana company that was, at all relevant times, acting as an agent for RLB Contracting. Inc. to pursue additional dredging to fulfill the contract referenced above.

4.

Defendant Travelers Casualty and Surety Company of America issued Bond No. 106988560 as surety to RLB on the job referenced above.

## II.      Jurisdiction and Venue

5.

The Court has jurisdiction over Diamond Services' Miller Act claim under 40 U.S.C § 3133(B)(3), and supplemental jurisdiction over all other claims in this action arising out of the same transaction or occurrence under 28 U.S.C. § 1367.

6.

In the alternative, this Court has jurisdiction over the contract and quasi-contract claims *infra* under 28 U.S.C. § 1333 because the provision of a dredge, a tug, and barges by Diamond to RLB for the purpose of dredging the Houston Ship Channel, a navigable waterway, are traditional maritime activities and give rise to admiralty jurisdiction.

7.

Venue is proper in the Southern District of Texas because the principal contract described below was performed in the Southern District of Texas. Additionally, the surety bond issued pursuant to the Miller Act by Travelers and furnished to the U.S. Army Corps of Engineers, Galveston District, was issued in this Judicial District.

### III.    Facts

8.

RLB Contracting, Inc. was awarded a contract by the Army Corps of Engineers, Galveston District, Contract No. W912HY19C0015, Bond No. 106988560, in the Houston Ship Channel, Brady Island to HSC Turning Basin.

9.

Pursuant to that contract and to the Miller Act, RLB was obligated to furnish a surety bond, which it obtained from Travelers, and Travelers provided Bond No. 106988560 relative to the Houston Ship Channel dredging project. Under the bond, Travelers bound itself jointly and severally for the protection of all persons supplying labor and material in carrying out the work provided for the dredging contract.

10.

RLB needed assistance dredging the volume called-for by the Army Corps of Engineers contract, so it contracted with Harbor Dredging, using Harbor Dredging as an agent to find a dredging company to assist with the project.

11.

Harbor Dredging subsequently contracted with Diamond Services Corporation for the provision of a dredge and dredge work, in a contract dated February 24, 2020, attached here as Exhibit A. That contract identifies Diamond Services corporation and Harbor Dredging as subcontractors of RLB.

12.

Though Diamond's contract was with Harbor Dredging, Harbor Dredging served only to broker Diamond to RLB. On the job, Diamond took instruction from and worked at the direction

of RLB. Harbor provided no materiel toward the job, and only provided one person whose job, to Diamond's knowledge, did no actual work in furtherance of the job but instead was merely present at the job.

13.

For its part, Diamond Services provided a bucket dredge, barges to receive the dredge spoil, and a pushboat both to move the dredge and to move the barges.

14.

For its part, RLB provided a barge for offloading the dredge spoil onto the site chosen by the Corps. RLB did no actual dredging on the dredge project. All the dredging was performed by Diamond.

15.

Pursuant to the terms of the agreement, Diamond invoiced Harbor Dredging $6.50 per cubic yard dredged, and Harbor Dredging would invoice $6.90 per every yard dredged by Diamond, which RLB would then pay to Harbor and Harbor to Diamond.

16.

RLB was paid, per its contract with the Corps, $12 per cubic yard dredged. Diamond was paid $6.50 per cubic yard dredged: 54.16% of the contract price.

IV.      RLB's Equitable Adjustment

17.

Though the contract called for Diamond to be paid a flat amount for work, almost immediately, problems arose and RLB and Harbor deviated from the contract.

18.

The Houston Ship Channel, unknown to Diamond and unknown to RLB, had a surfeit of debris that slowed the project significantly. Still, Diamond worked diligently as directed.

19.

Because of the amount of detritus in the ship channel, Diamond could not work profitably on the project. Therefore, Diamond told RLB it anticipated leaving the job.

20.

RLB, Harbor, and Diamond met on or about September of 2020, at Diamond's office, and RLB informed Diamond that RLB would submit a request for equitable adjustment (REA) to ensure everyone was compensated for the unforeseen circumstances of excess detritus.

21.

In reliance of RLB's representations, Diamond continued working as directed.

22.

Unknown to Diamond and without notice to Diamond, on or around October 26, 2020, RLB submitted a request to the Corps for an equitable adjustment of the contract made basis of this suit. RLB submitted this request for equitable adjustment on its own behalf, and to cover additional expenses incurred by Diamond.

23.

RLB contended, accurately, that there was an unforeseeable amount of detritus in the project that made the project more difficult and time-consuming. Specifically, RLB cited subsurface or latent physical conditions at the site which differ materially from those indicated in the contract.

24.

In RLB's submittal to the Corps, RLB argued for a contractual deviation upward in the amount of $1,911,861, on the basis that RLB was operating at 26% efficiency in June of 2020; 28% efficiency in July of 2020; and 88% efficiency in August of 2020. That correspondence is attached as Exhibit B.

25.

RLB also sought a contractual adjustment for Diamond Services. However, with regard to Diamond Services, RLB made a significant math error to Diamond's detriment: Diamond was working at about one-quarter efficiency in June and July, so its payment should have been multiplied by about four (or, more precisely, June should have been divided by .26, July by .28, and August by .12). Instead, RLB added 26% to for Diamond's June work, 28% for Diamond's July work, and 12% for Diamond's August work.

26.

Diamond, the same day it received correspondence from RLB, sent correspondence to RLB outlining this failure to Diamond's detriment. In that correspondence, Diamond asked that it contribute to any supplement to the request for equitable adjustment to account for RLB's math error to Diamond's detriment. That correspondence is attached as Exhibit C.

27.

RLB later, to Diamond's knowledge, withdrew that first REA from the Corps, and submitted a new REA to the Corps.

28.

To submit a new REA to the Corps, RLB solicited invoices, time sheets, and other information from Diamond, telling Diamond that RLB's REA submittal would include Diamond Services' claim.

29.

Despite multiple requests, RLB has refused to share with Diamond its submittal the Corps, and RLB has likewise refused to share with Diamond the Corps' response to RLB.

30.

On information and belief, RLB has received from the Corps a significant monetary sum in response to its REA.

31.

Under the terms of the contract, as modified, Diamond is entitled to no less than 54.16% of the equitable adjustment received by RLB.

**V.     Diamond brokers the tug M/V MISS KERRILYNN to RLB**

32.

Soon after Diamond began work, it became apparent that RLB did not have a tug to transport Diamond's barges from the excavation site to the unloading site.

33.

The parties disagreed on who was responsible for the provision of a tug, so Diamond and RLB compromised: they would each fund half of the tug.

34.

Diamond brokered a tug owned by Central Boat Rentals, Inc., the M/V MISS KERRILYNN, to RLB for this job.

35.

The payment for the M/V MISS KERRILYNN operated such that Diamond paid for the tug, and invoiced half of the tug expenses to Harbor Dredging, which again, acting as a mere conduit, passed those invoices through to RLB. RLB was then to pay for its half of the tug.

36.

The tug M/V MISS KERRILYNN operated for the benefit of and at the direction of RLB, the prime contractor on this job.

37.

The tug M/V MISS KERRILYNN performed its work in a good and workmanlike manner and it was indispensable to the job by moving barges for the removal of dredge spoil.

38.

Diamond sent its invoices for the tug MISS KERRILYNN to RLB, but RLB has not paid those invoices.

39.

At no point while the tug MISS KERRILYNN was working on the job did RLB dispute that it owes the invoices for the tug MISS KERRILYNN.

40.

Because RLB has not paid for its share of the M/V MISS KERRILYNN, Diamond has paid for the M/V MISS KERRILYNN in full.  Those invoices promised to be paid by RLB but unpaid by RLB include Invoice No. 20-090, for $49,876.48; Invoice No. 20-091, for $42,134; Invoice No. 20-127, for $55,120.76; Invoice No. 20-138, for $47,421.65; Invoice No. 20-139 in the amount of $50,880; Invoice No. 20-172 in the amount of 47430.40; Invoice No. 20-173 in

the amount of $49,743.85; Invoice No. 21-021 in the amount of $53,656.25; and Invoice No. 21-030 in the amount of $18,671.20. The sum of these invoices is: $414,934.59, and Diamond is entitled to this amount.

## VI.    Adjustment to the total yardage

### 41.

RLB has paid for some of Diamond's invoices, through Harbor. However, the pre-dredge survey indicates the entirety of the job called for dredging 362,289 cubic yards. RLB has only paid Diamond for dredging 314,215 yards.

### 42.

Diamond's payment is $6.50 per cubic yard. Multiplied by the 48,074 yards, RLB has short-paid Diamond $312,481, in addition to the payments for the M/V MISS KERRILYNN and for the REA above.

## VII.    Claim under the Miller Act against RLB and Travelers

### 43.

This is an action for damages pursuant to 40 U.S.C. § 3133(b)(3) against the Federal Miller Act Bond issued by RLB, as principals, and Travelers, as surety, for damages resulting from RLB's failure to pay Diamond for the following:

a.  Diamond's dredging;

b.  RLB's half of its charter of the tug MISS KERRILYNN;

c.  RLB's failure to pay Diamond for any equitable adjustment it may have received or may yet receive from the Corps;

d.  RLB's failure to submit accurate information to the Corps that has resulted or may result in a short-payment to Diamond;

e.   RLB's failure to pay Diamond for the amount actually dredged

44.

The failure of RLB to pay Diamond as outlined above is a breach of the Miller Act Bond issued by Travelers, and are damages recoverable against the Miller Act Bond.

45.

RLB and Travelers are obligated, pursuant to the Miller Act Bond, to compensate Diamond for the services performed on the project.

46.

Furthermore, for any REA received by RLB for work performed by Diamond, Diamond is entitled to recover no less than 54% of the REA under theories of quantum meruit and unjust enrichment.

47.

Diamond has been required to retain counsel in order to bring this action and is obligated to pay reasonable attorney's fees and is entitled to recovery of its reasonable attorney's fees and costs.

## VIII.   Breach of Contract, Implied Contract, and Quasi-Contract against Harbor and against RLB

48.

Diamond re-alleges the allegations above.

49.

The contract referenced above, as modified orally and confirmed through performance, is a valid and enforceable contract with Harbor, and with RLB.

50.

In the alternative, Diamond had an implied or quasi-contract with RLB, where RLB has received the benefit of Diamond's work – literally all the dredging on the job, *inter alia* – and benefitted from it through receipt of an REA from the Corps, but has not paid Diamond its proportionate share of the REA.

51.

Diamond is entitled to compensation for breach of contract, breach of quasi-contract and or breach of implied contract as to RLB and Harbor, entitling Diamond to quantum meruit and unjust enrichment damages from Harbor, from RLB, and from Travelers as RLB's surety, awarding Diamond its proportionate share of the REA determined by the work provided by Diamond, but in no event less than 54% of the REA.

52.

Diamond is further entitled to compensation for breach of contract and breach of quasi-contract as to RLB, for RLB's failure to pay for the M/V MISS KERRILYNN, entitling Diamond to (a) breach of contract damages; (b) quantum meruit; and (c) unjust enrichment damages from RLB, awarding Diamond half its expenditures on the M/V MISS KERRILYNN.

53.

In the alternative, Diamond Services Corporation is a third-party beneficiary of the contract between Harbor and RLB, entitling Diamond to sue RLB directly under that contract, and is entitled to damages for breach of that contract.

WHEREFORE, use plaintiff, Diamond Services Corporation, demands judgment against Defendants, RLB, Harbor Dredging, and Travelers, for all compensatory and consequential damages resulting from RLB's failure to pay Diamond Services Corporation for the work performed by Diamond, plus all interest, costs, attorney's fees and other such relief that this Court deems just and proper.

**DATED**: September 15, 2021

Respectfully submitted:

**BOHMAN | MORSE, LLC**

/s/Harry E. Morse
HARRY E. MORSE (#31515)
MARTIN S. BOHMAN (#22005)
400 POYDRAS STREET, SUITE 2050
NEW ORLEANS, LA 70130
TELEPHONE: (504) 930-4009
FAX: (888) 217-2744
E-MAIL: Harry@BohmanMorse.com
E-MAIL: Martin@BohmanMorse.com

*Attorneys for Diamond Services Corporation*