**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **DIAMOND SERVICES** | § | |
| **CORPORATION** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00253-JVB** |
| | § | |
| **RLB CONTRACTING, INC., HARBOR** | § | |
| **DREDGING, INC. AND TRAVELERS** | § | |
| **CASUALTY AND SURETY COMPANY** | § | |
| **OF AMERICA** | § | |
| | § | |
| **Defendants.** | § | |

## <u>DEFENDANT RLB CONTRACTING, INC.'S MOTION TO DISMISS</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant RLB Contracting, Inc. ("RLB") moves to dismiss the claims asserted by Plaintiff Diamond Services Corporation ("Diamond") in its Original Complaint, DN 1, ("Complaint") for failure to state a claim upon which relief can be granted on the grounds set forth below:

### I.    <u>SUMMARY</u>

1.     Despite the *undisputed* facts that Diamond's contract on the federal dredging project was with RLB's subcontractor, Defendant Harbor Dredging, Inc. ("Harbor"), and not with RLB, that Diamond at all times issued its invoices for work on the project to Harbor and not to RLB, and that Diamond submitted its certified costs for the project to Harbor for inclusion in RLB's request for equitable adjustment of the prime contract due to a differing site condition and not to RLB, Diamond now asserts that it was a direct subcontractor for RLB or is somehow entitled to sue RLB directly under "Breach of

1

Contract, Implied Contract, and Quasi-Contract" theories. DN 1, Sec. VIII, ¶¶ 48-53. Diamond bases these claims in-part on allegations that Harbor was nothing more than RLB's "agent," "conduit," or "broker" and/or that Diamond was a "third party beneficiary" of the subcontract between Harbor and RLB. *Id.*, ¶¶ 3, 10, 12, 53. However, Diamond fails to plead sufficient facts to show a reasonable inference that an agency relationship existed between RLB and Harbor and/or the subcontract between RLB and Harbor conferred a third-party beneficiary status on Diamond.

2.    Diamond also generally asserts either the existence of a separate oral contract, or an oral modification to an existing agreement, that would allegedly permit Diamond to assert direct contractual claims against RLB. *Id.*, ¶¶ 49, 51-52. But Diamond failed to plead sufficient factual allegations to draw a reasonable inference that a separate, enforceable oral agreement existed between it and RLB or that a valid oral modification to an existing agreement occurred to allow Diamond to assert direct contractual claims against RLB. Additionally, Diamond's oral contract and oral modification claims fail as a matter of law because such claims either lack valid consideration as any alleged consideration involved preexisting duties that Diamond already was required to perform under its written sub-subcontract with Harbor and/or any such alleged agreement or modification constituted nothing more than an oral suretyship contract or oral agreement to answer for the debt or default of another, which is unenforceable under the statute of frauds.

3.    Diamond's alternative claims for an implied or quasi-contract also fail to state a claim upon which relief can be granted because Diamond failed to plead sufficient facts to show a reasonable inference that the circumstances or conduct of RLB and

Diamond implied an inference of mutual assent to a contract. In addition, the existence of the express sub-subcontract between Diamond and Harbor covering the subject matter serving as the basis for Diamond's implied or quasi-contract assertions bars such claims as a matter of law. Similarly, Diamond's *quantum meruit* and unjust enrichment claims are barred as a matter of law due to Diamond's sub-subcontract with Harbor covering the subject matter serving as the basis for these equitable theories of recovery.

4.     Diamond's Miller Act allegations fail to state a claim upon which relief may be granted against RLB and Defendant Travelers Casualty and Surety Company of America ("Travelers") because Diamond has no direct contractual privity with RLB, and Diamond was at most a second-tier subcontractor on the project that failed to plead or show it provided timely and adequate notice of its claim under the Miller Act.  Even if Diamond's Miller Act claims survive these defects, Diamond's claims for recovery under the Miller Act against RLB and Travelers of a share of RLB's equitable adjustment under the prime contract fails to state a claim for which relief can be granted because Diamond does not plead that it incurred extra cost or expense for labor or material furnished due to delays or differing site conditions for which it was not responsible and does not identify such costs or expenses required for recovery of extra costs or expenses under the Miller Act.

5.     Therefore, because Diamond's Complaint fails to state a claim against RLB upon which relief can be granted, and because Diamond refused to amend its Complaint under the Court's Local Rule 6, Diamond should not be permitted to amend its Complaint, Diamond's claims against RLB should be dismissed pursuant to Rule 12(b)(6).

## II.   <u>BACKGROUND</u>

**A.      The Project and the Parties.**

6.      RLB served as the prime contractor for the United States Army Corps of Engineers ("USACOE") under Contract No. W912HY19C0015 ("Prime Contract") on a project that involved dredging work in the Houston Ship Channel between Brady Island and the Houston Ship Channel Turning Basin, wholly within Texas ("Project") . DN 1, ¶¶ 1-2, 8. As part of its obligations for the Project, RLB was required to provide a Miller Act payment bond ("Bond"), which RLB obtained from Travelers. *Id.*, ¶ 1. RLB entered into a subcontract with Harbor to perform certain portions of the Project ("Subcontract"). *Id.,* ¶ 10; **Ex. 1** (Subcontract).[1] Harbor then entered into a sub-subcontract with Diamond to perform portions of Harbor's work on the Project ("Sub-Subcontract"). *Id.,* ¶ 11; DN 1-2. Further, Diamond would invoice Harbor, not RLB, for its work on the Project. DN 1, ¶ 15.

7.      Diamond concedes the following facts in its own Complaint:

> 8.
>
> RLB Contracting, Inc. was awarded a contract by the Army Corps of Engineers,
> Galveston District, Contract No. W912HY19C0015, Bond No. 106988560, in the Houston Ship
> Channel, Brady Island to HSC Turning Basin.

*Id.*, ¶ 8.

---

[1] A court may consider documents attached to a Rule 12(b)(6) motion, provided the documents are referenced in the complaint and central to the plaintiff's claim. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller Federal Practice and Procedure: Civil 3d § 1357 (3d ed. 2004 and Supp. 2007)); *Collins v. Morgan Stanley Dean Witter,* 224 (F.3d 496, 498-99 (5th Cir. 2000).

> 10.
>
> RLB needed assistance dredging the volume called-for by the Army Corps of Engineers contract, so it contracted with Harbor Dredging, using Harbor Dredging as an agent to find a dredging company to assist with the project.
>
> 11.
>
> Harbor Dredging subsequently contracted with Diamond Services Corporation for the provision of a dredge and dredge work, in a contract dated February 24, 2020, attached here as Exhibit A. That contract identifies Diamond Services corporation and Harbor Dredging as

*Id.*, ¶¶ 10-11.

> 15.
>
> Pursuant to the terms of the agreement, Diamond invoiced Harbor Dredging $6.50 per cubic yard dredged, and Harbor Dredging would invoice $6.90 per every yard dredged by

*Id.,* ¶ 15.

**B.      Differing Site Conditions and Request for Equitable Adjustment.**

8.      During the Project, RLB encountered a differing site condition in the area where the dredging work was being performed. *Id.*, ¶ 18. On June 18, 2020, RLB provided notice of the differing site condition to the USACOE in accordance with the Prime Contract. DN 1-3, p. 1. RLB submitted an initial Request for Equitable Adjustment ("REA") of the Prime Contract on October 26, 2020. *Id.* After the Project was completed, RLB amended its REA and, in preparation for the amended REA, RLB requested that Harbor submit certified costs for the Project. On March 30, 2021, Diamond submitted its certified costs for the Project, which included overhead and profit to Harbor in the amount

of $2,362,344. **Ex. 2** (Diamond certified costs letter). Harbor then submitted its certified

costs to RLB, which incorporated Diamond's certified costs, overhead, and profit. **Ex. 3**

(Harbor certified costs letter). After receipt of the certified costs, overhead and profit from

Harbor, RLB submitted its amended REA to the USACOE. **Ex. 4** (Amended REA).

### III.   ARGUMENTS & AUTHORITIES

**A.      Legal Standard for Rule 12(b)(6) Motions to Dismiss.**

9.     To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 570 (2007)). A complaint meets the plausibility test "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. However, such

factual allegations must raise above mere speculation and a court is not bound to accept as

true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555; *see also*

*Iqbal,* 556 U.S. at 678 (stating "[t]he plausibility standard is not akin to a 'probability

requirement,' but it ***asks for more than a sheer possibility*** that a defendant has acted

unlawfully.") (emphasis added). Accordingly, while the Federal Rules of Civil Procedure

do not require "detailed factual allegations," they do require more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*,

550 U.S. at 555; *Iqbal,* 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice.").

10.     The Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. *See Iqbal,* 556 U.S. at 679. First, a court must identify conclusory allegations and disregard them, as they are not entitled to the presumption of the truth. *Id.* at 680-81. Second, a court must then consider the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  This evaluation is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. As such, dismissal under Rule 12(b)(6) is appropriate when the factual allegations, not the conclusory allegations or legal conclusions masquerading as factual allegations, demonstrate either the absence of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998). Further, "[d]ismissal is proper [under Rule 12(b)(6)] if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Torch Liquidating,* 561 F.3d at 384.

**B.      Diamond Fails to State a Plausible Contractual Claim Against RLB.**

11.     Diamond asserts "Breach of Contract, Implied Contract, and Quasi-Contract" claims against RLB. DN 1, Sec. VIII, p. 10-11. Under these breach of contract theories, Diamond claims it is entitled to recover a proportionate share of the REA and payment for half of the costs for Diamond chartering the tug MISS KERRILYNN ("Tug Boat Invoices"). *Id.*, ¶ 51-52. Although Diamond alleges that it has invoked this Court's jurisdiction by asserting a federal question claim under the Miller Act, Diamond's breach

of contract claims are governed by Texas state law as it is undisputed that the Project was located entirely in, and Diamond's work was performed entirely within, Texas. *Id.* ¶¶ 5, 7.

12. Accordingly, to survive a Rule 12(b)(6) motion Diamond's Complaint must set forth sufficient facts to establish the prima facie elements of a breach of contract claim under Texas law. *Provision Grp., Inc. v. Crown Toxicology, Ltd.*, No. 5:16-CV-1291-DAE, 2017 WL 11221433, at *3 (W.D. Tex. Oct. 19, 2017). Under Texas law, a plaintiff must prove the following elements to prevail on a breach of contract claim: "(1) a valid contract exists between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the breach." *Id.* (quoting *Viajes Gerpa, S.A. v. Fazeli*, 522 S.W.3d 524, 539 (Tex. App.—Houston [14th Dist.] 2016, no pet.)). Diamond's Complaint fails to plead sufficient facts to show a plausible direct, implied, or quasi-contractual relationship existed between Diamond and RLB.

    1. <u>Diamond fails to state plausible claims of a direct contractual relationship between Diamond and RLB.</u>

13. In its Complaint, Diamond admits that its only express, written contract for its work on the Project was its Sub-Subcontract with Harbor. *See e.g.* DN 1, ¶¶ 11, ("Harbor Dredging subsequently contracted with Diamond"), 12 ("Diamond's contract was with Harbor"); DN 1-2. While Diamond asserts the Sub-Subcontract "identifies" Diamond and Harbor as "subcontractors of RLB" this claim is contradicted by the Sub-Subcontract explicitly stating Harbor was the "Contractor" and Diamond was the "Sub-Contractor."

> **Job No:** W9 I 260 19C0015                                    **Date:** February 24, 2020
>
> This agreement is made this 29, a day of February 2020, and effective the 29" day of February 2020, by and between **Harbor Dredging, Inc,** 14905 Southwest Fwy, Sugar Land TX, 77478 hereinafter known as "Contractor", and **Diamond Services Corporation,** 503 South DeGravelle Road, Amelia, Louisiana 70340 hereinafter known as "Sub-Contractor," to perform the work identified in Article 2, in accordance with the Project's Contract Documents numbered W9126O19C0015 which is incorporated to this subcontract by reference.

DN 1-2, p. 1. Regardless, RLB is not a party to the Sub-Subcontract and is not bound by its terms. As such, the Sub-Subcontract cannot serve as a legitimate basis for Diamond to assert direct contractual claims against RLB.

14.     In an attempt to avoid these facts fatal to its breach of contract claims against RLB, Diamond alleges: (a) Harbor was merely the "agent," "broker," or "conduit" for RLB; (b) Diamond is a third-party beneficiary under the Subcontract between RLB and Harbor; and/or (c) Diamond had an oral agreement with RLB or was involved in an oral modification to an existing contract with RLB. DN 1, ¶¶ 3, 10, 12, 35, 49, 53.

>     i.   *Diamond fails to plead sufficient facts to show an agency relationship existed between RLB and Harbor.*

15.     Under Texas law, "[a]uthority to act on the principal's behalf and control are the two essential elements of agency." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017). With respect to the "authority to act" element:

> [T]here must be a meeting of the minds as between the parties in establishing the agency and the consent of both the principal and the agent is necessary to create the agency. The principal must intend that the agent shall act for him and the agent must intend to accept the authority and act on it.

*A & S Elec. Contractors, Inc. v. Fischer*, 622 S.W.2d 601, 603 (Tex. App.—Tyler 1981, no writ).

16.     But "the key question is whether the principal has the right to control the agent with respect to the details of that conduct." *Rincones*, 520 S.W.3d at 589; *see also Northwinds Abatement, Inc. v. Employers Ins. of Wausau,* 258 F.3d 345, 351 (5th Cir. 2001). Accordingly, in order to survive a Rule 12(b)(6) motion, a plaintiff must at least plead sufficient facts from which a court "could conclude that the alleged principal had the right to control both the means and the details of process by which the alleged agent was to accomplish the task." *Karl Rove & Co. v. Thornburgh,* 39 F.3d 1273, 1296 (5th Cir. 1994). "Absent proof of the right to control, only an independent contractor relationship is established." *Matter of Carolin Paxson Advert., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991).

17.     Diamond asserts the following with respect to RLB and Harbor's alleged agency relationship:

- "Harbor . . . was, at all relevant times, acting as an agent for RLB Contracting, Inc. to pursue additional dredging to fulfill [the Prime Contract]." DN 1*, ¶* 3

- "RLB needed assistance dredging the volume called-for by the [USACOE] contract, so it contracted with Harbor Dredging, using Harbor Dredging as an agent to find a dredging company . . . ." *Id.,* ¶ 10.

- "Though Diamond's contract was with Harbor Dredging, Harbor Dredging served only to broker Diamond to RLB." *Id.,* ¶ 12.

- "The payment for the M/V MISS KERRILYNN operated such that Diamond paid for the tug, and invoiced half of the tug expenses to Harbor Dredging, which again, acting as a mere conduit, pass those invoices through to RLB." *Id.,* ¶ 35.

These assertions are nothing more than mere threadbare, unsupported legal conclusions about an alleged agency relationship that Diamond attempts to couch as factual allegations. As such, these claims are not entitled to the presumption of truth, hold no merit, and the Court must disregard them. *Twombly*, 550 U.S. at 555; *Iqbal,* 556 U.S. at 678-79.

10

18.     Even if these claims contained factual assertions that rise above mere conclusory allegations that must be disregarded, such assertions still fail to offer a reasonable inference that an agency relationship existed between RLB and Harbor that would in turn permit a reasonable inference that a direct contractual relationship existed between Diamond and RLB. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp.3d 1292, 1301 (D. Nev. 2014). Simply put these claims fail to show Harbor was anything but an independent contractor for RLB. *Matter of Carolin Paxson Advert., Inc.*, 938 F.2d at 598.

19.     As shown above, Diamond failed to plead sufficient facts that there was a meeting of the minds that RLB intended for Harbor to act as its agent, or that Harbor intended to accept the authority and act as RLB's agent, in connection with Diamond's work on the Project. *A & S Elec. Contractors, Inc.*, 622 S.W.2d at 603. Further, Diamond wholly fails to make any assertions that RLB had a right to control Harbor as its purported agent. *Karl Rove,* 39 F.3d at 1296. As the Fifth Circuit has instructed, when a party fails to make any allegations regarding an essential element necessary to obtain relief, dismissal under Rule 12(b)(6) is proper. *Torch Liquidating,* 561 F.3d at 384.

20.     Further, the Subcontract and Sub-Subcontract clearly show that no agency relationship existed between RLB and Harbor in connection with Diamond's work on the Project. DN 1-2; **Ex. 1**. Neither the Subcontract nor Sub-Subcontract expressly state, or inherently infer, that RLB intended for Harbor to act as its agent, that Harbor intended to accept the authority and act as RLB's agent, or that RLB had the requisite control over Harbor. *Id.* Because Diamond failed to plead factual allegations to plausibly show an

agency relationship existed between RLB and Harbor, the Court should dismiss its "agency" claims pursuant to Rule 12(b)(6).

> ii. *Diamond's third-party beneficiary claim fails due to Diamond's insufficient pleadings and the express terms of the Subcontract.*

21.     Generally, only parties to a contract have the right to complain about its breach but an exception to this rule permits  a third-party beneficiary to the contract to sue for damages caused by its breach. *AK FortySeven Recs., Ltd. Co. v. Bahamas Ministry of Tourism*, No. 4:17-CV-3750, 2018 WL 8755881, at *7 (S.D. Tex. Sept. 28, 2018). However, there is a presumption against conferring a third-party beneficiary status. *Id.*; *see also Baldwin v. Mortgage Elec. Registration Sys., Inc.*, No. 4:19-CV-03921, 2020 WL 4227591, at *3 (S.D. Tex. June 8, 2020). Based on this presumption, courts generally only confer a third-party-beneficiary status when the parties to the contract have "clearly and fully spelled out their intention" to contract or confer a direct benefit to a third party. *AK FortySeven*, 2018 WL 8755881, at *7 (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). Thus, "[t]o determine whether the contracting parties intended to directly benefit a third party and entered into the contract for that purpose, **courts must look solely to the contract's language** . . . ." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (emphasis added). "If the contract's language leaves any doubt about the parties' intent, those 'doubts must be resolved against conferring third-party beneficiary status.'" *Id.* 103 (quoting *Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex. 2011)).

22.     First, in its Complaint, Diamond only makes a one-line conclusory statement that it is "a third-party beneficiary of the contract between Harbor and RLB," but otherwise fails to assert any factual allegations explaining how it is a third-party beneficiary. DN 1, ¶ 53. Simply put, this type of conclusory legal statement fails to sufficiently plead any factual allegations to satisfy the required plausibility standards. *See Twombly*, 550 U.S. at 555; *Iqbal,* 556 U.S. at 678. This alone permits the Court to dismiss Diamond's third-party beneficiary claims for failure to state a claim upon with relief can be granted under Rule 12(b)(6). *See Torch Liquidating Trust*, 561 F.3d 377, 384; *Frith*, 9 F. Supp. 2d at 737-38.

23.     Diamond also failed to provide a copy of the Subcontract for the Court's review or even point the Court to any language in the Subcontract that allegedly establishes its third-party beneficiary status. As noted above, to determine whether a party is conferred third-party beneficiary status, "courts must look solely to the contract's language . . . ." *Brumitt,* 519 S.W.3d at 102. Without providing a copy of the agreement, or at least pointing to any language therein, it is clear that Diamond has failed to sufficiently plead a claim for third-party beneficiary status under the Subcontract to satisfy the *Twombly/Iqbal* standards.

24.     Moreover, when reviewing the Subcontract it is abundantly clear that Diamond is not a third-party beneficiary of it. *See* **Ex. 1**. First, there is no reference to Diamond in the Subcontract. *See id.* Further, there is no language whatsoever in the Subcontract that "clearly and fully spells out" RLB and Harbor's intention to contract or confer a direct benefit to any third party, let alone Diamond, sufficient to find any third-party beneficiary status was provided. *See id.*; *AK FortySeven*, 2018 WL 8755881, at *7. Therefore, Diamond's Complaint fails to state a claim upon which relief can be granted

with respect to its third-party beneficiary claims and the Court should dismiss this claim, and any breach of contract claims based on such, pursuant to Rule 12(b)(6).

### iii. Diamond fails to plausibly plead the existence of an enforceable oral contract, or oral modification to an existing agreement, with RLB.

25.     Diamond also appears to assert a separate oral contract, or an oral modification to an existing agreement, allegedly permits Diamond to assert direct contractual claims against RLB for it to recover a share of the REA and/or payments for the Tug Boat Invoices. DN 1, ¶¶ 49, 51-52. However, Diamond failed to plead sufficient factual allegations to draw a reasonable inference that a separate, enforceable oral agreement existed between RLB and Diamond or a valid oral modification to an existing agreement occurred to allow Diamond to assert such direct contractual claims against RLB.

26.     First, Diamond's Complaint wholly fails to expressly assert that a separate oral agreement existed between RLB and Diamond. Instead, Diamond vaguely, and in conclusory fashion, references an "agreement" in which Diamond would perform some activity in connection with the Project and then subsequently expected payment, directly or indirectly, from RLB as a result, including but not limited to the following claims:

- "The parties disagreed on who was responsible for the provision of a tug, so Diamond and RLB compromised: they would each fund half of the tug." DN 1, ¶ 33.

- "The payment for the M/V MISS KERRILYNN operated such that Diamond paid for the tug, and invoiced half of the tug expenses to Harbor Dredging, which again, acting as a mere conduit, passed those invoices through to RLB." *Id.* ¶ 35.

- "Those invoices promised to be paid by RLB but unpaid by RLB . . . ." *Id.*, ¶ 40.

- "The contract referenced above, as modified orally . . . is a valid and enforceable contract with Harbor, and with RLB." *Id.*, ¶ 49.

These threadbare claims fail to expressly state a separate, oral contract existed with RLB to provide fair notice of Diamond's claims and also fail to provide sufficient factual pleadings to give rise to a reasonable inference that a separate, oral agreement existed between Diamond and RLB. Also, Diamond concedes for the Project the only express contract it entered was with Harbor and the only express contracts RLB entered were the Subcontract with Harbor and Prime Contract with the USACOE. *Id.*, ¶¶ 8, 10-12; DN 1-2.

27.     Even if these vague assertions in Diamond's Complaint can be viewed as expressly claiming a separate, oral contract existed with RLB, Diamond failed to sufficiently plead factual allegations satisfying all of the necessary elements for a breach of contract claim. Under Texas law, the necessary elements for beach of a written or oral contract are the same. *Provision Grp., Inc.*, 2017 WL 11221433, at *3. Thus, in order to survive a Rule 12(b)(6) motion, a complaint must state facts sufficient to support a plausible inference that an oral contract existed between the parties, the plaintiff fully performed, the contract was breached, and the plaintiff was harmed. *Id.*

28.     In *Provision*, the plaintiff claimed the following with respect to an alleged oral contract that a defendant challenged through a Rule 12(b)(6) motion:

- "[Plaintiff] was engaged/contracted by [defendant] to perform commissions based marketing services wherein [plaintiff] would promote, advertise, and educate healthcare providers regarding [defendant's] services and products";

- Plaintiff and defendant "proceeded under the terms of the oral agreement"; and

- Plaintiff "fully performed its obligations under the contract."

2017 WL 11221433 at *3. But the court in *Provision* held that "even taking the facts in the light most favorable to [plaintiff], the complaint fails to state sufficient facts surrounding

the terms and existence of the oral contract for the Court to find that a valid oral contract

existed to support any breach of contract claim." *Id.* at *4. The court explained:

> [Plaintiff] has not plead any facts regarding, *inter alia*, (1) whether there was
> an offer and acceptance between the parties, (2) the material terms of the
> contract besides, broadly, the provision of "commissions based marketing
> services," (3) whether the parties consented to such terms, and (4) whether
> there is any evidence to indicate that the parties intended an agreement, if at
> all, to be mutually binding. Moreover, the Court finds that the material terms
> of the alleged oral contract, as pled in the complaint, are overly broad,
> cursorily explained in one sentence, and insufficiently definite, which does
> not allow the Court to understand the parties' obligations . . . . **These are
> fatal defects to [plaintiff's] breach of contract claim.**

*Id.* (internal citation omitted and emphasis added).

29.     The same "fatal defects" to the plaintiff's oral contract claims in *Provision*

exist with Diamond's breach of oral contract claims against RLB. Specifically, Diamond

at most generally claims that RLB breached some oral agreement with RLB giving rise to

Diamond right to recover a share of the REA and/or a portion of the Tug Boat Invoices.

However, Diamond's Complaint, as shown by sample allegations listed above in Paragraph

28, does not plead sufficient facts on: (1) whether there was an offer and acceptance

between the parties; (2) the material terms of the alleged oral contract; (3) whether the

parties consented to such terms; and (4) whether there is any evidence to indicate that the

parties intended the alleged oral agreement to be mutually binding.[2] *See id.*

30.     The only potential "material terms" for the alleged oral contract with RLB

that Diamond pled was that "[p]ursuant to the terms of the agreement, Diamond invoiced

---

[2] Although Diamond asserts in support of its breach of contract claims that RLB did not dispute it owed for
the Tug Boat Invoices, this assertion is categorically different than pleading sufficient facts showing RLB
assented to an alleged oral contract to pay for such invoices. *See* DN 1, ¶ 39.

Harbor Dredging $6.50 per cubic yard dredged, and Harbor Dredging would invoice $6.90 per every yard dredged by Diamond, which RLB would then pay to Harbor and Harbor to Diamond" and that the parties allegedly agreed that "they would each fund half the tug." DN 1, ¶¶ 15, 33. But as the court in *Provision* explained, where the material terms of a contract "are overly broad, cursorily explained in one sentence, and insufficiently definite," it does not allow a court to understand the parties' obligations sufficiently to find a contract exists. 2017 WL 11221433 at *4. Simply put, the allegations in Diamond's Complaint do not allow for the Court to gauge the most basic material terms of the alleged oral contract between Diamond and RLB. Instead, Diamond's Complaint at most contains threadbare pleadings that an oral agreement *existed* between Diamond and RLB, which constitutes nothing more than a legal conclusion couched as a factual allegation that holds no weight and is not entitled to the presumption of truth. *See Iqbal,* 556 U.S. at 680-81.

31.     In addition, to be enforceable a contract must be based on valid consideration. *Tex. Gas Utilities Co. v. Barrett,* 460 S.W.2d 409, 412 (Tex. 1970). But a promise to fulfill a preexisting duty is not valid consideration. *Martens v. Prairie Producing Co.*, 668 S.W.2d 889, 891 (Tex. App.—Houston [14th Dist.] 1984, no writ). Here Diamond completely failed to plead this alleged oral contract with RLB was based on any consideration, let alone valid consideration. The closest Diamond comes to alleging any consideration for this purported oral agreement with RLB is the following:

- "For its part, Diamond Services provided a bucket dredge, barges to receive the dredge spoil, and a pushboat both to move the dredge and to move the barges." DN 1, ¶ 13.

- "For its part, RLB provided a barge for offloading the dredge spoil onto the site chosen by the [USACOE]. . . . All the dredging [on the Project] was performed by Diamond." *Id.*, ¶ 14.

- "Diamond brokered a tug owned by Central Boat Rentals, Inc. . . ." *Id.*, ¶ 34.

- "The parties disagreed on who was responsible for the provision of a tug, so Diamond and RLB compromised: they would each fund half of the tug." *Id.*, ¶ 33.

- "Diamond paid for the tug, and invoiced half of the tug expenses to Harbor Dredging, which again, acting as a mere conduit, passed those invoices through to RLB. RLB was then to pay for its half of the tug." *Id.*, ¶ 35.

32.     However, all of the above were preexisting duties that Diamond was required to perform under the Sub-Subcontract with Harbor.

**SCOPE OF WORK:** Subcontractor agrees to commence work herein described upon execution of this contract, and to perform and complete such work in accordance with Contract Documents and under the general direction of Contractor in accordance with the schedule listed in article 3, Sub-contractor shall include all work necessary or incidental to complete the following bid items:

| Item | Unit Price | Est. Quantity | Unit | Total |
|---|---|---|---|---|
| CLIN 000 I. Mobilization | $125,000.00 | 1 | LS | $ 1 25,000.00 |
| CLIN 0003.  Dredging Section 16 | $6.50 | 335,100 | CY | $2,178,150.00 |
| CLIN 0005.  Demobilization | $125,000.00 | 1 | LS | $125,000.00 |
| | | | Grand Total | $2,428,150.00 |

Subcontractor will only be paid for volumes dredged and paid for by owner in accordance with owner's before dredging and after dredging surveys in accordance with prime contractor's contract. Subcontractor will be responsible for traversing the hopper barges from excavation site to the unloading site. Subcontractor is responsible for providing appropriate site labor to meet or exceed the specifications in regards to certified crane operators necessary to perform the work stated.

DN 1-2, Art. 2, p. 1. Tug boats are required to traverse the loaded hopper barges holding the excavated material from the excavation site to the unloading site. Under the Sub-Subcontract, Diamond had the preexisting obligation to perform this work and thus, had the preexisting obligation to furnish the equipment to do so too.

33.     Additionally, Diamond's claims that the parties orally modified an existing contract with RLB fails for similar reasons. First, akin to any claims about a separate oral

contract, Diamond wholly failed to plead which specific "agreement" was allegedly orally modified. Instead, Diamond asserted that "[t]he contract referenced above, as modified orally and confirmed through performance, is a valid and enforceable contract with Harbor, and with RLB." DN 1, ¶ 49. However, three contracts were previously "referenced above" in Diamond's Complaint. *See id.*, ¶¶ 8-9 (references to the Prime Contract), 10 (reference to the Subcontract), 11-12 (references to the Sub-Subcontract). Yet Diamond failed to sufficiently plead which of these three contracts was allegedly orally modified.

34.     Even if it had clearly pled which of three contracts was allegedly orally modified, Diamond still failed to plead factual allegations showing *how* the "agreement referenced above" was modified or how any such alleged modification was valid and enforceable. "A contract modification must satisfy the traditional requirements of a contract . . . ." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App.—Dallas 2008, no pet.). But Diamond failed to plead sufficient facts on: (1) whether there was an offer and acceptance of this oral modification; (2) the material terms of the alleged oral modification; (3) whether the parties consented to such terms of the oral modification; and (4) whether there is any evidence to indicate that the parties intended the alleged oral modification to be mutually binding. *See Provision Grp., Inc.*, 2017 WL 11221433, at *4.

35.     Further, a modification, like a contract, must be supported by consideration. *Dieterich*, 270 S.W.3d at 702. "When a party agrees to do no more than that which he is already bound to do under an existing contract, the consideration is not sufficient to support a modification." *Id.* Diamond failed to sufficiently plead what *new* consideration supported the alleged modification to an existing contact with RLB. Instead, as detailed above, all of

19

the activities that Diamond allegedly performed for its claimed oral modification were preexisting duties it was required to perform under the Sub-Subcontract and thus, not valid consideration for an enforceable modification. *See supra* ¶¶ 33-34; DN 1-2, Art. 2, p. 1.

36.     Regardless of whether Diamond's claims are about a separate oral contract with RLB or oral modification to an existing agreement, both fail to state a claim upon which relief can be granted due to the statute of frauds. This is because Diamond's oral contract or oral modification claims in essence constitute an alleged agreement by RLB to answer for the debt or default of Harbor or the USACOE. For example, Diamond asserts:

- "RLB needed assistance dredging the volume called-for by the [USACOE] contract, so it contracted with Harbor Dredging, using Harbor Dredging as an agent to find a dredging company to assist with the project." DN 1, ¶ 10.

- "RLB informed Diamond that RLB would submit a request for equitable adjustment (REA) [to the USACOE] to ensure everyone was compensated for the unforeseen circumstances of excess detritus." *Id.*, ¶ 20.

- "RLB later, to Diamond's knowledge, withdrew that first REA from the [USACOE], and submitted a new REA to the [USACOE]. To submit a new REA to the [USACOE,] RLB solicited invoices, time sheets, and other information from Diamond, telling Diamond that RLB's REA submittal would include Diamond Services' claim." *Id.*, ¶ 27-28.

- "The payment for the M/V MISS KERRILYNN operated such that Diamond paid for the tug, and invoiced half of the tug expenses to Harbor Dredging, which again, acting as a mere conduit, passed those invoices through to RLB. RLB was then to pay for its half of the tug." *Id.*, ¶ 35.

- "Because RLB has not paid for its share of the M/V MISS KERRILYNN, Diamond has paid for the M/V MISS KERRILYNN in full. Those invoices promised to be paid by RLB but unpaid by RLB . . . ." *Id.*, ¶ 40.

37.     Based on Diamond's own pleadings, any alleged oral contract with RLB, or oral modification to an existing contract, is nothing more than alleged oral suretyship

contract or oral agreement to answer for the debt or default of another which, even if true, would be unenforceable under the statute of frauds. TEX. BUS. & COM. CODE § 26.01(b)(2).

38.     Consequently, neither Diamond's allegations about a separate oral agreement between RLB and Diamond nor its allegations about an oral modification to an existing agreement with RLB, state a claim upon which relief can be granted and as such, the Court should dismiss such claims pursuant to Rule 12(b)(6).

2.   <u>Diamond's Complaint also fails to plead sufficient facts to plausibly show the existence of an implied or quasi-contractual relationship with RLB.</u>

39.     Diamond alternatively asserts it had an implied or quasi-contract with RLB entitling it to recover additional funds under the REA and for the Tug Boat Invoices. "Under Texas law, an implied contract is like an express contract . . . . there 'must be shown the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances.'" *ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.*, 514 F. Supp.3d 927, 933 (S.D. Tex. 2021) (quoting *Haws & Garrett Gen. Contrs., Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 608-09 (Tex. 1972)).

40.     In *ACS,* the plaintiffs asserted a claim for breach of implied contract and, in response to the defendants' Rule 12(b)(6) motion, relied on the following pleadings:

- "Plaintiff Doctors and Insurance Companies have impliedly demonstrated their mutual assent to an agreement requiring the Insurance Companies to reimburse the Plaintiff Doctors at a usual customary rate for emergency medical services rendered to the Insurance Companies' Members and requiring the Plaintiff Doctors to accept reimbursement at a usual and customary rate as payment";

- Plaintiffs "have provided emergency medical services to thousands of Insurance Companies' Members"; and

21

- The Insurance Companies "have dramatically decreased the reimbursements to Plaintiff Doctors for services provided to certain of their Members."

*Id.* at 933. The *ACS* court found such pleadings were "wholly conclusory and bereft of facts that demonstrate a meeting of the minds." *Id.* at 934. The court also found that the plaintiffs did not allege "any facts to show that either the 'circumstances' or the 'conduct' of the parties implies an inference of mutual assent to contract," and such "naked conclusions" and "bare fact pleadings" failed to state a claim for breach of implied contract. *Id.*

41.      Akin to the plaintiffs in *ACS*, Diamond's Complaint offers mere "naked conclusions" and "bare fact pleadings" for its implied and quasi-contract claims. For example, Diamond simply alleges in support of an implied or quasi-contract for its REA claim that "RLB has received the benefit of Diamond's work - literally all of the dredging on the job, *inter alia* - and benefitted from it through receipt of an REA from the [USACOE] but has not paid Diamond its proportionate share of the REA." DN 1, ¶ 50. For its Tug Boat Invoices claim, Diamond merely offers a one-line conclusory statement that "Diamond is further entitled to compensations for breach of contract and breach of quasi-contract as to RLB, for RLB's failure to pay for the M/V MISS KERRILYNN . . . ." *Id.,* ¶ 52. However, Diamond's Complaint did not allege sufficient facts to show a reasonable inference that the circumstances or conduct of RLB and Diamond implied an inference of mutual assent to a contract. As such, Diamond's implied and quasi-contract claims cannot survive a Rule 12(b)(6) motion and must be dismissed. *See ACS,* 514 F. Supp.3d at 934.

42.      Moreover, "[w]here there exists a valid express contract covering the subject matter, there can be **no implied contract**." *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674,

675 (Tex. 1964) (emphasis added). Also, "when a valid, express contract covers the subject matter of the parties' dispute, there can be ***no recovery under a quasi-contract theory***." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (emphasis added). As conceded by Diamond, there exists a valid, express contract (*i.e.* the Sub-Subcontract) that covers the subject matter of its alleged implied or quasi-contract claims. DN-1. ¶¶ 11, 12; DN 1-2, Art. 2, p. 1. Thus, Diamond's alleged implied or quasi-contract claims against RLB fail as a matter of law and as such, Diamond's Complaint fails to state a claim on which relief can be granted for its implied or quasi-contract claims.

C.      **Diamond's *quantum meruit* and unjust enrichment claims are barred as a matter of law.**

43.     Under well-established Texas law *quantum meruit* and unjust enrichment are unavailable when an express contract covers the subject matter at issue. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (*quantum meruit*); *Hill v. Shamoun & Norman, LLP,* 544 S.W.3d 724, 732 (Tex. 2018) (same); *Garcia v. Loancare, LLC*, No. 3:17-CV-00343, 2018 WL 3614813, at *10 (S.D. Tex. June 25, 2018) (unjust enrichment); *Protectors Ins. & Fin. Servs., LLC v. Lexington Ins. Co.*, No. CIV.A. H-12-3469, 2013 WL 5164630, at *4 (S.D. Tex. Sept. 12, 2013) (stating "unjust enrichment and quantum meruit are unavailable when an express contract covers the subject matter at issue.") (internal quotation marks omitted). The express contract bar applies not only when the plaintiff seeks to recover under the equitable theories of *quantum meruit* and unjust enrichment from the party with whom he expressly contracted, "but also when the plaintiff seeks recovery from a third party foreign to the original contract but who benefitted from its

performance." *See Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 724 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

44.     Diamond's *quantum meruit* and unjust enrichment claims are barred as a matter of law because a valid, express contract (*i.e.* the Sub-Subcontract) covers the subject matter underpinning these equitable theories. *See* DN 1, ¶¶ 46, 51-52; DN 1-2, Art. 2, p. 1. Thus, Diamond fails to state a claim upon which relief can be granted with its *quantum meruit* and unjust enrichment claims and they should be dismissed under Rule 12(b)(6).

**D.     Diamond Fails to State a Plausible Claim for Relief Against RLB and Travelers Under the Miller Act.**

45.     The Miller Act requires prime contractors on qualifying federal construction projects to procure payment bonds and grants *certain* parties the right to sue on such bonds. 40 U.S.C. § 3133(b). The right to bring a suit under the Miller Act on a payment bond extends only to those parties having either a direct contractual relationship with the prime contractor furnishing the bond (*i.e.* a first-tier subcontractor) or having a direct contractual relationship with a subcontractor of the prime contractor (*i.e.* a second-tier subcontractor). *Id.* § 3133(b)(1)-(2); *see also U.S. ex rel. Gulf States Enters. v. R.R. Tway, Inc.*, 938 F.2d 583, 586-87 (5th Cir. 1991). The distinction between whether a party is a first-tier or second-tier subcontractor is critical because if a party is a first-tier subcontractor then it has a right to bring a claim on a bond without being subject to the Miller Act's notice provisions. *See* 40 U.S.C. § 3133(b)(1). But if a party is a second-tier subcontractor then they must establish they provided timely and adequate notice under the Miller Act. *Id.* § 3133(b)(2); *Liles Constr. Co. v. U.S.*, 415 F.2d 889, 890 n.2 (5th Cir. 1969).

46.     With respect to the notice requirement under the Miller Act, a second-tier subcontractor must provide written notice within ninety days of the last date of performance of work. 40 U.S.C. § 1331(b)(2). In addition, the notice must be served:

> (A) by any means that provides written, third-party verification of delivery to the contractor at any place the contractor maintains an office or conducts business or at the contractor's residence; or

> (B) in any manner in which the United States marshal of the district in which the public improvement is situated by law may serve summons.

*Id.* Finally, the notice "must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied for or whom the labor was done or performed." *Id.*

1.  Diamond did not qualify as first-tier subcontractor under the Miller Act but failed to plead a Miller Act claim as a second-tier subcontractor.

47.     As detailed above, and incorporated into this section by reference, Diamond did not have a direct contractual relationship with RLB. *See supra* Section III.B. Instead, as expressly pled by Diamond in its Complaint, "Diamond's contract was with Harbor," for "the provision of a dredge and dredging work" on the Project. DN 1, ¶¶ 11-12; DN 1-2. Consequently, Diamond does not qualify as a first-tier subcontractor under the Miller Act but instead Diamond at most was a second-tier subcontractor. 40 U.S.C. § 3133(b)(1)-(2). However, Diamond failed to plead a Miller Act claim as a second-tier subcontractor.

48.     As a second-tier subcontractor, Diamond was required to provide timely and adequate pre-suit notice pursuant to the Miller Act as condition precedent for it to assert claims against the Bond and Diamond's Complaint was required to contain pleadings on how it provided the required notice under the Miller Act. *Id.*; *U.S. v. Naylor Cos., LLC,*

No. SA:14-CV-95-OLG, 2014 WL 12586776, at *3 (W.D. Tex.—Apr. 14, 2014). However, such a pleading is wholly absent from Diamond's Complaint. *See generally* DN 1. Thus, Diamond failed to state a plausible claim under the Miller Act and on this basis alone, Diamond's Miller Act claims should be dismissed under Rule 12(b)(6).

> 2.  Diamond failed to provide timely and adequate notice under the Miller Act.

49.     Even assuming Diamond generally pled that it gave notice to RLB, Diamond failed to show it provided the required notice to RLB under the Miller Act stating "with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied for or whom the labor was done or performed." 40 U.S.C. § 1331(b)(2). Where a notice fails to name the alleged defaulting subcontractor, it fails to satisfy an explicit requirement under the Miller Act and thus, makes the notice deficient. *See CTI/DC, Inc. v. Selective Ins. Co. of Am.* 392 F.3d 114, 119-21 (looking to Miller Act case law to interpret identical notice provision in Maryland's Little Miller Act).

50.     "Although courts have been somewhat lenient about enforcing the Act's requirements concerning the *method* by which such notice is given, they have interpreted more rigidly the Act's requirements for the *contents* of that notice." *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1437 (11th Cir. 1996) (citing *Fleisher Engineering & Construction Co. v. United States ex rel. Hallenbeck*, 311 U.S. 15, 18–19, 61 S.Ct. 81, 83, 85 L.Ed. 12 (1940); *U.S. ex rel. Jinks Lumber Co. v. Federal Ins. Co.*, 452 F.2d 485, 487-88 (5th Cir. 1971)) (internal citations omitted). "This strictness as to the contents of the notice is driven by the purpose of the notice requirement itself, which is to protect the general contractor by fixing a date beyond which, absent notice, it will not be liable for the

subcontractor's debts." *Id.* (citing *U.S. ex rel. Kinlau Sheet Metal Works v. Great Am. Ins. Co.*, 537 F.2d 222, 223-24 n. 1 (5th Cir. 1976)).

51.     The only correspondence from Diamond to RLB referenced in Diamond's Complaint was the letter attached as Exhibit C to its Complaint. DN 1, ¶ 26. However, this letter does not reference Harbor as a defaulting or delinquent subcontractor nor does it state with substantial accuracy the amount Diamond now alleges it is owed under its Miller Act claims in the Complaint. *See* DN 1-4. Accordingly, the letter attached as Exhibit C to Diamond's Complaint does not satisfy the Miller Act's notice requirements and as such, Diamond's Miller Act claims should be dismissed pursuant to Rule 12(b)(6).

3.   <u>Diamond fails to assert a Miller Act claim against RLB and Travelers for any failure by RLB to pay it any portion of the equitable adjustment RLB received due to differing site conditions.</u>

52.     The Fifth Circuit has held that a subcontractor can only recover from a Miller Act surety "for additional or increased costs *actually expended* in furnishing the labor or material in the prosecution of the work provided for in the contract and *attributable to the delay.*" *U.S. v. Millers Mut. Fire Ins. Co.,* 942 F.2d 946, 951 (5th Cir. 1991) (emphasis original). In other words, liability is limited to the "out-of-pocket costs of delay" and a claimant "cannot recover from a Miller Act surety the profits on out-of-pocket expenditures attributable to delay." *Id.* at 952-53. The same analysis applies to Diamond's Miller Act claims against RLB and Travelers for a share of the equitable adjustment.

53.     Here, Diamond's Miller Act claim against RLB and Travelers for "54.16% of the equitable adjustment received by RLB" is not based on Diamond's increased costs actually expended in furnishing the labor or materials for Diamond to prosecute the work

attributable to any delay or differing site condition claims. *See* DN 1, ¶¶ 31, 46. While Diamond asserts bare legal conclusions that it is entitled to recover under the Miller Act against RLB and Travelers 54.16 percent or 54 percent share of the equitable adjustment RLB received under its Prime Contract (*id.*, ¶ 43(c), 44, and 45) and that Diamond is entitled to recover no less than 54 percent of the REA under theories of *quantum meruit* and unjust enrichment (*id.*, ¶ 46), nowhere in its Complaint does Diamond identify that it has incurred extra costs in furnishing labor and materials to the project that it is entitled to recover against either RLB or Travelers under the Miller Act.

54.     Instead, this claim for a share of RLB's equitable adjustment is based solely on a ratio of Diamond's unit rate per cubic yard of dredged materials in its Sub-Subcontract with Harbor that unquestionably contain built-in profits and RLB's unit rate in the Prime Contract. *Id.*, ¶¶ 16, 19, 25, 31, 46; DN 1-2, Art. 2, p. 1. The certified costs amount Diamond submitted to Harbor for the REA also included both overhead and profit calculated as percentages, which again are impermissible items of recovery under the Miller Act. *See* **Ex. 2.**

55.     Further, RLB's amended REA and Diamond's certified costs amount did not segregate any out of pocket costs for labor or materials incurred by Diamond as a result of any delay or differing site condition. *See* **Ex. 2 and 4**. Instead, RLB's amended REA was based on a measured mile computation (*See* **Ex. 4**, Attachment 1 thereto, Calc. Summary) that: (a) totaled RLB's direct costs incurred in performing the work, including subcontractor costs, which in turn included overheads applied to those direct costs and profits that should have been earned on those direct costs and overheads by its

subcontractor, Harbor (which in turn included Diamond's costs, overheads and profits) on a monthly basis (*See* **Ex. 4**, "REQUEST FOR EQUITABLE ADJUSTMENT WORKSHEET" and "Summary page for Subcontracto[r]s costs," *see also* **Ex. 2 and 3**); (b) multiplied those monthly costs in (a) by a calculated inefficiency percentage based on the differing site conditions; (c) totaled the monthly inefficiency amounts incurred by RLB calculated in (b); (d) added to the total in (c) debris disposal costs incurred by RLB; (e) multiplied the sum of (c) and (d) by RLB's home office overhead percentage of 33.7 percent;  (f) multiplied the amount of (e) by RLB's profit of 9 percent; (g) multiplied the amount of (f) by RLB's bond costs of 1.50 percent; and (h) added (c), (d), (e), (f) and (g) to derive a total. *See* **Ex. 4**, "REQUEST FOR EQUITABLE ADJUSTMENT WORKSHEET." Clearly many of these costs and profit items are not eligible for recovery by a subcontractor under the Miller Act, and in addition to failing to provide proper notice under the Miller Act of its claims for extra costs for labor and material arising from any delays or differing site conditions, Diamond has failed to plead the element of damages. Thus, Diamond failed to state a claim for recovery of any portion of the REA from RLB or Travelers under the Miller Act and such claims should be dismissed under Rule 12(b)(6).

## PRAYER

For the foregoing reasons, RLB requests that the Court dismiss Diamond's contractual claims against RLB, claims against RLB under the equitable theories of *quantum meruit* and unjust enrichment, and Miller Act claims pursuant to Rule 12(b)(6), and that RLB recovers all such other relief as it may show itself justly entitled.

Respectfully submitted,

By:   */s/ Mark C. Guthrie*
      Mark C. Guthrie
      Texas Bar No. 08636600
      Federal ID No. 6213
      mguthrie@winstead.com
      Cody N. Schneider
      Texas Bar No. 24073595
      Federal ID No. 2228631
      cschneider@winstead.com
      **WINSTEAD PC**
      600 Travis Street, Suite 5200
      Houston, Texas 77002
      Telephone (713) 650-8400
      -and-
      D. Blake Wilson
      State Bar No. 24090711
      Federal ID No. 3515726
      bwilson@winstead.com
      **WINSTEAD PC**
      401 Congress Avenue, Suite 2100
      Austin, Texas 78701
      Telephone (512) 370-2800

**COUNSEL FOR DEFENDANT**
**RLB CONTRACTING, INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify RLB complied with this Court's Local Rule 6 on Special Requirement for Motions to Dismiss under Rule 12(b) and Diamond did not timely amend its pleading.

*/s/ Cody N. Schneider*
Cody N. Schneider

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2021, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/ Cody N. Schneider*
Cody N. Schneider