UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of DIAMOND SERVICES CORPORATION | CIVIL ACTION NO: 3:21-cv-00253 |
| VERSUS | DISTRICT JUDGE HON. JEFFERY V. BROWN |
| RLB CONTRACTING, INC., HARBOR DREDGING, INC., and TRAVLERS CASUALTY AND SURETY COMPANY OF AMERICA | MAGISTRATE JUDGE HON. ANDREW M. EDISON |

**Opposition to Travelers' Motion to Dismiss**

Travelers' motion to dismiss adopts RLB's motion, so Diamond can respond in significant part by adopting Diamond's earlier opposition to RLB's motion. Diamond's opposition will focus instead on the arguments in RLB's reply (Rec. Doc. 24) and in RLB's supplemental memorandum (Rec. Doc. 26).

1. Diamond gave RLB notice within the meaning of the Miller Act within nine days of the end of work.

Diamond has established that under the Miller Act, it was RLB's subcontractor because Harbor was a conduit, bringing Diamond to the job. RLB and Travelers argue that Diamond was only a sub-subcontractor, and RLB argues further that Diamond did not give notice to RLB within the ninety day requirement in the Miller Act. If Diamond were a sub-subcontractor, Diamond would still have stated a valid Miller Act claim. A Miller Act sub-subcontractor must give notice to the prime contractor within ninety days of the end of work. RLB received notice of Diamond's claim nine days after the end of work – at the express request of RLB. Diamond sent its certified cost and pricing data on March 30, 2021. Rec. Doc. 22-2. Meantime, Diamond's dredge demobilized on February 23, 2021, and arrived at Diamond's yard on February 27, 2021, according

1

to the attached declaration of Stephen Swiber. RLB's own submittal to the Corps shows Diamond working through February 19, 2021 (Rec. Doc. 22-4 at p. 7 shows Diamond's labor and equipment costs through February 19; Rec. Doc. 22-4 at p. 10 shows Diamond payroll expenses through February 21, 2021.)

The ninety-day notice requirement under the Miller Act requires only "that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." *Houston Fire & Cas. Ins. Co. v. United States*, 217 F.2d 727, 730 (5th Cir. 1954); see also *United States for the use of Jinks Lumber Co. v. Federal Ins. Co.*, 452 F.2d 485 (5th Cir. 1971); *United States for the use of Consolidated Electrical Distributors, Inc. v. Altech, Inc.*, 929 F.2d 1089, 1093 (5th Cir. 1991). Diamond's proof of claim, sent to Harbor and immediately forwarded to RLB, more than adequately suffices. RLB may object that the demand was sent to Harbor, not to RLB. This argument, if made, should fail. Looking at context, Diamond had made plain to RLB that Diamond held RLB responsible to submit an accurate equitable request, inclusive of Diamond's portion, and to satisfy Diamond out of it: Diamond sent RLB correspondence on December 14, 2020 – a year earlier – in which Diamond laid that out to RLB in detail: "Diamond requires that it be offered a meaningful opportunity to participate in [the REA] process," and further, "Diamond demands *from RLB* its proportionate share of the equitable adjustment." (emphasis added) Furthermore, outlined in the Complaint, paragraph 20, RLB had told Diamond in September of 2020 that RLB would submit a request for equitable adjustment and compensate Diamond out of that REA, and Paragraph 28, RLB, not Harbor, solicited Diamond's claim. As Mr. Swiber explains in his declaration, the claim was submitted to Harbor at the direction of RLB, with the intent that Harbor immediately forward

it to RLB – which, of course, Harbor did. But, Mr. Swiber explains, he communicated to RLB that Diamond expected RLB to pay.

That Diamond expected payment from RLB on the REA follows from the work performed by the parties, outlined in Diamond's opposition to RLB's motion to dismiss: Harbor was a mere conduit, and the Harbor/Diamond contract called for Diamond to be paid by RLB. Harbor was never going to be able to pay Diamond, except with RLB's money, and Diamond always expected payment from RLB. Diamond sent its claim to Harbor for Harbor to send it to RLB. Diamond always held RLB responsible, and RLB had always told Diamond that RLB was responsible. The Fifth Circuit addressed analogous facts in *Jinks Lumber Co.* – there, Jinks, a supplier, sent notice to the subcontractor with a carbon copy to the prime contractor, and had (like Diamond to RLB in December 2020, but in gentler terms) indicated that the supplier held the prime contractor responsible. 452 F.2d at 488. The Fifth Circuit held that notice was amply adequate. The same result should follow here.

Again, Diamond was RLB's subcontractor, not its sub-subcontractor, because Harbor was nothing but a conduit for invoices. Even if Diamond were RLB's sub-subcontractor, Diamond complied with Miller Act notice because it gave notice to RLB well within 90 days of the end of work.

2. RLB's additional arguments raised in its reply and supplemental brief are meritless.

To the extent RLB's reply briefs (Rec. Doc. 24 and Rec. Doc. 26) raise new arguments the Court would consider to be part of Travelers' motion to dismiss, Diamond would briefly respond.

　　a. *The contract does not have a no-damages-for-delay clause.*

RLB argues that Diamond is not entitled to a claim against RLB for Diamond's share of the equitable adjustment because the subcontract includes a no-damages-for-delay clause. It does

3

not. A no-damages-for-delay clause is something like that found in *Zachry Const. Corp. v. Port of Houston Authority of Harris County*, 449 S.W.3d. 98, 103 (Tex. 2014), where the contract provides that the contractor "shall receive no financial compensation for delay or hindrance to the work"; or *City of Houston v. RF Ball Const. Co.*, 570 S.W.2d 75, 77 (Tex. App. 1978) ("The Contractor shall receive no compensation for delays or hindrances to the work [. . .])"; or *Green International, Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex. 1997) (Contractor "shall not be liable to the Subcontractor for delay to Subcontractor's work by the act, neglect or default of the Owner, Contractor, action of workmen or others, or any cause beyond Contractor's control.") There is no provision in Diamond's contract that references delay, or waives damages for delay, or in any shape operates as a no-damages-for-delay clause.

> b. *RLB's argument that its REA was within the scope of the prime contract, and its argument that Diamond was actually paid, are unavailing.*

RLB argues that the Prime Contract "expressly provides RLB with the right to request for an equitable adjustment." This is true, but it is of no moment. The REA itself is necessarily beyond the contract: it is an equitable adjustment for more work than the contract anticipated. RLB's request, Rec. Doc. 22-4, outlines at length how the subsurface conditions "differed materially from those indicated in the contract," and that RLB should get more money as a consequence. It is normal for a contract to have a provision for changes – often in the form of change orders (rather the opposite of a no-damages-for-delay clause). But those change orders, though contemplated by the contract, are still beyond the contract. If they were part of the contract, RLB could not have asked for more money because RLB's contract with the Corps was for a sum certain. RLB established to the Corps' satisfaction not just that there was a different site condition, but that it was reasonably unforeseeable. Rec. Doc. 22-4 at p. 3. RLB got $6,000,000 additional dollars because of the different site condition. This case is unique because RLB submitted its REA,

4

included Diamond's expenses, got money for Diamond's expenses, and tells this Court that the money the Corps gave RLB for Diamond's expenses is, in fact, RLB's.

RLB separately argues that Diamond was paid on the underlying contract, so Diamond should not be paid again as part of the equitable adjustment. Rec. Doc. 26 at p. 12 ("As such, the evidence shows Diamond has received over $3.1 million on the Project despite its certified costs submitted for the request for equitable adjustment showing its total costs, with overhead and profits, total only 2,362,344. How Diamond thinks it is entitled on any basis, equitable or otherwise, to an additional $2 million or more, is beyond all reason.") RLB's hyperbole is misplaced. RLB asks this Court conflate the original contract with the equitable adjustment. RLB entered into a contract with the Corps, for a sum certain: $9,571,200. Rec. Doc. 24-1 at p. 6. Diamond did not file suit alleging it was unpaid on the underlying contract. Instead, Diamond filed suit because RLB solicited an equitable adjustment from the Corps for an additional $8,867,212, and it received an additional $6,000,000, inclusive of Diamond's claim. Diamond's submittal of $2,362,344 is part of the (additional) equitable adjustment, not the original contract.

## Conclusion

Diamond filed suit on the basis that it understood that RLB had submitted a request for equitable adjustment to the Corps, inclusive of Diamond's time and materials, that RLB had received funds from the Corps, but that RLB had not paid Diamond for Diamond's share of that equitable adjustment. RLB shows this Court that it did just that: it solicited about $9 million from the Corps for a differing site condition. Its submittal included all Diamond's time and materials. Diamond's time and materials, after Harbor's and RLB's markups on them, constitute more than half RLB's total claim. RLB received $6 million from the Corps. RLB asks this Court to rule that RLB can keep Diamond's money. This Court should reject the effort.

RLB undertook work on a Miller Act project. Travelers issued a bond on the job. Miller Act bonds cover delay damages. *United States ex rel. TMS Mechanical Contractors v. Millers Mut. Fire Ins. Co. of Texas*, 942 F.2d 946 (5th Cir. 1991). Diamond gave notice to RLB of its claim nine days after Diamond's dredge left the job, sending notice through Harbor at the insistence of RLB. Diamond had separately informed RLB explicitly that Diamond expected to be made whole out of the equitable adjustment. Diamond gave RLB notice within the law governing the Miller Act, and Travelers is responsible for Diamond's damages, less its profit.

Respectfully submitted:

**BOHMAN | MORSE, LLC**

/s/Harry E. Morse
HARRY E. MORSE (#31515)
MARTIN S. BOHMAN (#22005)
400 POYDRAS STREET, SUITE 2050
NEW ORLEANS, LA  70130
TELEPHONE: (504) 930-4009
FAX: (888) 217-2744
E-MAIL: HARRY@BOHMANMORSE.COM
E-MAIL: MARTIN@BOHMANMORSE.COM

*Attorneys for Diamond Services Corporation*