# EXHIBIT 1-E



## 410 Broadway • Port Lavaca, TX 77979 • 361-552-2104 • Fax 361-552-2110

Ms. Maria E. Rodriguez                                                                 10/26/2020
Department of the Army
U.S. Army Engineer District, Galveston
P.O. Box 1229
Galveston, Tx 77553-1229

> RE:     RLB Contracting, Inc.'s Request for Equitable Adjustment
>         Contract No. W912HY19C0015, Houston Ship Channel, Brady Island to HSC
>         Turning Basin, Pipeline Dredging, Harris County, Texas

Dear Ms. Rodriguez:

RLB Contracting, Inc. ("RLB") hereby submits this Request for Equitable Adjustment
("REA") in connection with the above-referenced Contract to the U.S. Army Corps of Engineers
("USACE"). As discussed in detail below, RLB is presenting a Type 1 Differing Site Condition
as outlined in FAR 52.236-2 (1): *Subsurface or latent physical conditions at the site which differ
materially from those indicated in this contract* to support this REA.

### BACKGROUND

RLB promptly notified USACE, as shown in Attachment 1, on June 18, 2020, of a differing
site condition encountered on contract W912HY19C0015 regarding the excessive debris
encountered inside the channel limits of section 1 in compliance with FAR 52.236-2 *Differing
Site conditions* (1984): *"The Contractor shall promptly, and before the conditions are disturbed,
give a written notice to the Contracting Officer of (1) Subsurface or latent physical conditions at
the site which differ materially from those indicated in this contract."*

A Type 1 differing site condition requires the following items outlined below to be proven to
be considered valid. Below are the items and our detailed response to each.

### 1. RLB Contracting was required to act as a reasonably prudent contractor in interpreting the contract documents.

RLB acted as a reasonably prudent contractor by interpreting the contract documents,
specifically on page G-0004 of the drawings, which show the presence of tires in the vicinity of
station 1265+00. The survey provided does not indicate debris and only shows tires for which
the government included a unit price bid item to remove.

1 | P a g e

RLB also performed a site investigation by excavating material within the dredging template and examining samples of the dredge material prior to the start of work. No excessive debris was found during the site investigation. Both the survey provided in the plans and the site investigation did not indicate excessive debris and trash to the magnitude found within the dredge template.

## 2. The excessive subsurface conditions encountered were reasonably unforeseeable.

RLB did perform a site investigation and examined the material present within the dredging template and an excessive amount of debris was not encountered. RLB was also provided with a small section of a multibeam survey which indicated tires were present in the vicinity of station 1265+00, as represented on page G-0004 of the plans. This survey does not convey excessive debris which has been encountered within the dredging limits of section 1.

After the start of work, RLB was notified by a subcontractor's employee performing the work on site, Mr. Blake Marks, that excessive debris was deposited within the working limits of section 1 on contract, W912HY19C0015, during the operations of a previous USACE dredging contract W9126G17C0013. After being notified of this event, RLB obtained a sworn and signed affidavit from Mr. Marks, detailing the events of this matter. This affidavit is attached in the document package and is quoted as such:

*"In order to complete Contract Number W9126G-17-C-0013 and gain acceptance of the work by the United States Army Corps of Engineers, Crosby removed substantial portions of this debris by dragging it outbound approximately 1,500' in the Houston Ship Channel from the area Crosby encountered it [inside the dredging template], to a location outside of Crosby's dredge templates. Crosby deposited this debris between the approximate stations 1266+48.72 to 1250+00..."*

To further prove the subsurface conditions encountered were reasonably unforeseeable, invoice number 7, dated August 25, 2020, shows the dredging on this contract was 36% complete yet the tonnage of tires removed and disposed of on this contract was 168% of the bid quantity. USACE issued a modification to the contract to include the increased quantity of tires to be removed. This fact coupled with the fact there is no debris showing in the survey provided by USACE clearly proves that the existing subsurface conditions encountered were reasonably unforeseeable. Because the tonnage of tires to be removed was grossly unforeseen by USACE, it is apparent that this overabundance of debris would have been unforeseeable to a prudent contractor as well.

## 3. RLB Contracting reasonably relied on the indications of subsurface conditions in the contract and the subsurface conditions encountered differed material.

Debris of this magnitude was not reflected in the subsurface conditions of the contract plans or specifications and was unforeseeable to RLB and USACE due to the debris being placed into section 1 of contract W912HY19C0015 by the previous contractor performing work on USACE contract W9126G17C0013 as attested in the affidavit attached in the document package.

2 | P a g e

**4. That the contractor's claimed excess costs were solely attributable to the materially different subsurface conditions.**

It is apparent that the subsurface conditions indicated in the contract differed materially from what was indicated in the plans and specifications due to the excessive debris placed by the previous contractor within the channel limits of section 1. RLB had no knowledge of the actions taken by the previous contractor, which altered the subsurface conditions on section 1, when bidding this project. As stated in our pre-award survey, RLB bid this project and planned to perform the work with a different subcontractor, Berry Brothers. RLB was not made aware of the previous contractor's actions until RLB investigated the differing site condition after the dredging had commenced with the current subcontractor, Harbor Dredging.

RLB produced a measured mile analysis covering the excessive costs and time that were solely attributed to the materially different subsurface conditions. The measured mile demonstrates RLB's ability to produce in an unimpacted area where trash and debris encountered is of a reasonable nature as anticipated in RLB's bid. The measured mile is inclusive of all inefficiencies of dredging in the unimpacted area proving that the excess costs were solely attributable to the materially different subsurface conditions. Any production less than the calculated measured mile below includes production losses and excessive costs that are solely attributable to the materially different subsurface conditions.

## CALCULATIONS

The equitable adjustment is proven in the measured mile, outlined below, and attached in the original working document "REA Measured Mile Calculation". To calculate productivity loss, RLB quantified a measured mile during the time frame of 8/25/2020 to the survey date of 9/16/2020. During this timeframe, 54,438 cubic yards of material was removed from the dredging template and verified by survey. The corresponding man hours utilized in removing this quantity of material was 4,975.90. The ratio of cubic yardage removed per man hour is 10.94 CY/MH which is established as the measured mile. This ratio sets the precedent of productivity actually achieved on this contract by RLB and is inclusive of all inefficiencies of dredging in an unimpacted area where debris encountered was of a reasonable nature.

This same calculation was derived from dredging completed in the June, July and August time frames as established by survey yardage removed versus working man hours. From May 17, 2020 to survey date June 23, 2020, 38 working days, RLB removed 24,086 cubic yards of dredged material from the channel template, and the corresponding man hours utilized in removing this quantity of material was 8,606.5, establishing a ratio of 2.80 CY/MH. By comparing this ratio of 2.80 CY/MH with the measured mile ratio of 10.94 CY/MH, a production loss of 74% is assessed. In addition, the days associated within this time frame were also impacted by the production loss assessed. As such, an additional 74% of 38 days need to be added to the contract, totaling an additional 29 days.

From June 24, 2020 to survey date July 20, 2020, 27 working days, RLB removed 18,441 cubic yards of dredged material from the channel template, and the corresponding man hours utilized in removing this quantity of material was 6,033.5, establishing a ratio of 3.06 CY/MH. By comparing this ratio of 3.06 CY/MH with the measured mile ratio of 10.94 CY/MH, a production loss of 72% is assessed. In addition, the days associated within this time frame were

3 | P a g e

also impacted by the production loss assessed. As such, an additional 72% of 27 days need to be added to the contract, totaling an additional 20 days.

From July 21, 2020 to survey date August 24, 2020, 34 working days, RLB removed 77,287 cubic yards of dredged material from the channel template, and the corresponding man hours utilized in removing this quantity of material was 7,994.70, establishing a ratio of 9.67 CY/MH. By comparing this ratio of 9.67 CY/MH with the measured mile ratio of 10.94 CY/MH, a production loss of 12% is assessed. In addition, the days associated within this time frame were also impacted by the production loss assessed. As such, an additional 12% of 34 days need to be added to the contract, totaling an additional 4 days.

To calculate the equitable adjustment, RLB compiled all direct costs incurred within the time frames listed above with respect of the survey dates. These direct costs include labor wages, labor allowances, per diem, debris disposal fees, equipment rates, and subcontractor fees. Labor wages, allowances and per diem were totaled from internal payroll reports. Debris disposal fees were totaled from invoices paid. Equipment rates were compiled from the EP-1110-1-8 Region VI and marine equipment operating expense schedules. The subcontractor's cost was totaled from work performed based on the survey amount calculated per month.

Each direct cost per month was compiled, totaled, and weighted against the production loss for each month to calculate the direct cost loss impact. The total direct cost loss impact for June is $618,775, the total direct cost loss impact for July is $519,360, and the total direct cost loss impact for August is $154,100.

Below is a summary of the analysis, the original calculations along with supporting documentation are included in the document package.

| PRODUCTIVITY LOSS CALCULATION SUMMARY | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Sep-20 | Jun-20 | | Jul-20 | | Aug-20 | |
| CY REMOVED | 54,438 | 24,086 | | 18,441 | | 77,287 | |
| TOTAL MAN HOURS | 4,976 | 8,607 | | 6,034 | | 7,995 | |
| CY/MAN HOUR | 10.94 | 2.80 | | 3.06 | | 9.67 | |
| PRODUCTIVITY LOSS % MEASURED MILE | | 74% | | 72% | | 12% | |
| TOTAL DIRECT COST | | $ | 831,471 | $ | 721,086 | $ | 1,324,247 |
| DIRECT COST IMPACT/LOSS | | $ | 618,775 | $ | 519,630 | $ | 154,100 |
| EQUITABLE ADJUSTMENT ASSESSD BY CUBIC YARD PER MAN HOUR IMPACT | | | | | | | |
| DIRECT COST IMPACT/LOSS | | $ | 618,775 | $ | 519,630 | $ | 154,100 |
| OVERHEAD 33.7% | | $ | 208,527 | $ | 175,115 | $ | 51,932 |
| SUBTOTAL | | $ | 827,302 | $ | 694,746 | $ | 206,031 |
| PROFIT, 9% | | $ | 74,457 | $ | 62,527 | $ | 18,543 |
| MONTHLY TOTALS | | $ | 901,759 | $ | 757,273 | $ | 224,574 |
| | | | | | | $ | 1,883,607 |
| | | | | BOND 1.50% | | $ | 28,254 |
| | | | | TOTAL | | $ | 1,911,861 |

| DAYS IMPACTED | | 29 | 20 | 4 |
|---|---|---|---|---|
| | | | TOTAL | 53 |

RLB-0000257

## CONCLUSION

It is apparent that the subsurface physical conditions within section 1 differed materially from those indicated in the contract. RLB acted as a prudent contractor in the evaluation of the bidding documents and has encountered a differing site condition that was unforeseeable. As shown, a previous contractor altered the subsurface conditions of the site by depositing excessive debris within the channel limits of section 1 of contract W912HY19C0015. Because of this, RLB has been substantially impacted by the excessive debris located within the dredging limits of section 1 through no fault of RLB.

This request is based on actual production and costs that have occurred while performing on this contract as shown in the measured mile. The measured mile clearly illustrates how the excessive debris encountered in the differing site condition caused a loss of production within the dredging template inside of section 1.

For the reasons set forth above, RLB is requesting an equitable adjustment in the amount of $1,911,861.00 and a contract time extension of 53 days for additional cost and time that were solely attributed to the materially different subsurface conditions.

I certify that this request for equitable adjustment is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Name

___Randy Boyd, President_____
Title

___10/26/2020_____
Date

RLB-0000258