# EXHIBIT 1-F



**410 Broadway • Port Lavaca, TX 77979 • 361-552-2104 • Fax 361-552-2110**

Ms. Maria E. Rodriguez  4/6/2021
c/o Alton Meyer, ACO
Department of the Army
U.S. Army Engineer District, Galveston
P.O. Box 1229
Galveston, Tx 77553-1229

      RE:    RLB Contracting, Inc.'s Request for Equitable Adjustment – Amendment 2
               Contract No. W912HY19C0015, Houston Ship Channel, Brady Island to HSC
               Turning Basin, Pipeline Dredging, Harris County, Texas

Dear Ms. Rodriguez:

    RLB Contracting, Inc. ("RLB") hereby submits this Amendment 2 to RLB's original Request for Equitable Adjustment ("REA") dated 10/27/2020, in connection with the above-referenced Contract to the U.S. Army Corps of Engineers ("USACE"). As discussed in detail below, RLB is presenting a Type 1 Differing Site Condition as outlined in FAR 52.236-2 (1): *Subsurface or latent physical conditions at the site which differ materially from those indicated in this contract* to support this REA.

## BACKGROUND

    RLB promptly notified USACE, as shown in Attachment 1, on June 18, 2020, of a differing site condition encountered on contract W912HY19C0015 regarding the excessive debris encountered inside the channel limits in compliance with FAR 52.236-2 *Differing Site conditions* (1984): *"The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of (1) Subsurface or latent physical conditions at the site which differ materially from those indicated in this contract."*

    A Type 1 differing site condition requires the following items outlined below to be proven to be considered valid. Below are the items and our detailed response to each.

1. **RLB Contracting was required to act as a reasonably prudent contractor in interpreting the contract documents.**

    RLB acted as a reasonably prudent contractor by interpreting the contract documents, specifically on page G-0004 of the drawings, which show the presence of tires in the vicinity of station 1265+00. The survey provided does not indicate debris and only shows tires for which the government included a unit price bid item to remove.

1 | P a g e

RLB also performed a site investigation by excavating material within the dredging template and examining samples of the dredge material prior to the start of work. No excessive debris was found during the site investigation. Both the survey provided in the plans and the site investigation did not indicate excessive debris and trash to the magnitude found within the dredge template.

2. **The excessive subsurface conditions encountered were reasonably unforeseeable.**

RLB did perform a site investigation and examined the material present within the dredging template and an excessive amount of debris was not encountered. RLB was also provided with a small section of a multibeam survey which indicated tires were present in the vicinity of station 1265+00, as represented on page G-0004 of the plans. This survey does not convey excessive debris which has been encountered within the dredging limits.

After the start of work, RLB was notified by a subcontractor's employee performing the work on site, Mr. Blake Marks, that excessive debris was deposited within the working limits of section 1 on contract, W912HY19C0015, during the operations of a previous USACE dredging contract W9126G17C0013. After being notified of this event, RLB obtained a sworn and signed affidavit from Mr. Marks, detailing the events of this matter. This affidavit is attached in the document package and is quoted as such:

*"In order to complete Contract Number W9126G-17-C-0013 and gain acceptance of the work by the United States Army Corps of Engineers, Crosby removed substantial portions of this debris by dragging it outbound approximately 1,500' in the Houston Ship Channel from the area Crosby encountered it [inside the dredging template], to a location outside of Crosby's dredge templates. Crosby deposited this debris between the approximate stations 1266+48.72 to 1250+00…"*

To further prove the subsurface conditions encountered were reasonably unforeseeable, USACE has issued multiple modifications to the contract to include the increased quantity of tires to be removed from 50 to the final quantity disposed of 260.53 tons. This fact coupled with the fact there is no debris showing in the survey provided by USACE clearly proves that the existing subsurface conditions encountered were reasonably unforeseeable. Because the tonnage of tires to be removed was grossly unforeseen by USACE, it is apparent that this overabundance of debris would have been unforeseeable to a prudent contractor as well.

3. **RLB Contracting reasonably relied on the indications of subsurface conditions in the contract and the subsurface conditions encountered differed material.**

Debris of this magnitude was not reflected in the subsurface conditions of the contract plans or specifications and was unforeseeable to RLB and USACE due to the debris being placed into section 1 of contract W912HY19C0015 by the previous contractor performing work on USACE contract W9126G17C0013 as attested in the affidavit attached in the document package.

4. **That the contractor's claimed excess costs were solely attributable to the materially different subsurface conditions.**

RLB-0000265

It is apparent that the subsurface conditions indicated in the contract differed materially from what was indicated in the plans and specifications due to the excessive debris placed by the previous contractor within the channel limits of section 1. RLB had no knowledge of the actions taken by the previous contractor, which altered the subsurface conditions on section 1, when bidding this project. As stated in our pre-award survey, RLB bid this project and planned to perform the work with a different subcontractor, Berry Brothers. RLB was not made aware of the previous contractor's actions until RLB investigated the differing site condition after the dredging had commenced with the current subcontractor, Harbor Dredging.

RLB produced a measured mile analysis covering the excessive costs and time that were solely attributed to the materially different subsurface conditions. The measured mile demonstrates RLB's ability to produce in an area where trash and debris encountered is of a reasonable nature. The measured mile is inclusive of all inefficiencies of dredging proving that the excess costs were solely attributable to the materially different subsurface conditions. Any production less than the calculated measured mile below includes production losses and excessive costs that are solely attributable to the materially different subsurface conditions.

## CALCULATIONS

The equitable adjustment is proven in the measured mile, outlined below, and attached in the original working document "REA Measured Mile Total Job 20210406 Final". To calculate productivity loss, RLB quantified a measured mile during the time frame of 8/1/2020 to 8/10/2020. During this timeframe, 26 barge loads of material were removed from the dredging template equivalent to 29,122 cubic yards of material. The corresponding man hours utilized in removing this quantity of material was 2,512. The ratio of cubic yardage removed per man hour is 11.60 CY/MH which is established as the measured mile. This ratio sets the precedent of productivity actually achieved on this contract by RLB and is inclusive of all inefficiencies of dredging.

This same calculation was derived from dredging completed monthly from June 2020-February 2021. To calculate the equitable adjustment, RLB compiled all direct costs incurred within the time frames listed above with respect of the survey dates. These direct costs include labor wages, labor allowances, per diem, debris disposal fees, equipment rates, rental rates and subcontractor fees. Labor wages, allowances and per diem were totaled from internal payroll reports and certified payroll. Debris disposal fees were totaled from invoices paid. Equipment rates were compiled from the EP-1110-1-8 Region VI and marine equipment operating expense schedules. The subcontractor's cost were calculated in the same manner and certified cost and pricing data was provided from each entity.

Each direct cost per month was compiled, totaled, and weighted against the production loss for each month to calculate the direct cost loss impact. The total direct cost loss impact is $8,867,212. Additionally, RLB is owed a contract time extension due to the overrun of the removal and excessive tires and debris. Using the same measured mile calculation above, the contract days owed were calculated and weighted against the production loss for each month.

3 | Page

The total contract days owed to the contractor is 148. The original calculations along with supporting documentation are included in the document package.

## CONCLUSION

It is apparent that the subsurface physical conditions of the dredging template differed materially from those indicated in the contract. RLB acted as a prudent contractor in the evaluation of the bidding documents and has encountered a differing site condition that was unforeseeable. As shown, a previous contractor altered the subsurface conditions of the site by depositing excessive debris within the channel limits of contract W912HY19C0015. And the primary scope of the contract has changed from maintenance dredging to debris removal. Because of this, RLB has been substantially impacted by the excessive debris located within the dredging limits through no fault of RLB.

This request is based on actual production and costs that have occurred while performing on this contract as shown in the measured mile. The measured mile clearly illustrates how the excessive debris encountered in the differing site condition caused a loss of production within the dredging template, but the calculation of the measured mile does not accurately represent true unimpacted production due to the entire dredging footprint being impacted by an overrun of tires for disposal.

USACE has issued modifications to the contract to include the increased quantity of tires to be removed but has failed to allocate the appropriate contract day increase associated with the removal and disposal of tires.

For the reasons set forth above, RLB is requesting an equitable adjustment in the amount of $8,867,212 for additional cost that were solely attributed to the materially different subsurface conditions and a contract time extension of 148 days.

I certify that this request for equitable adjustment is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

_____
Name

___Randy Boyd, President_____
Title

___4/6/2020_____
Date

4 | Page

RLB-0000267